3, 12, 0, 0, 3, 4, Kittman, Wallstra, McConaughey, Breitbarger v. Smith v. Smith, et al., Equities by Mann, Kruger Geiger. Good afternoon and thank you for taking the time to listen to oral arguments on this matter. There's, I think, basically two fairly distinct issues that are raised by this appeal. The first one, perhaps a little easier to address than the second, so I'd like to start with the interpretation of the ordinance. Would your honors like a brief recitation of the facts? We're familiar with them. It's your argument, though. You do it however you see fit. We've read the briefs. More or less, Judge, my client was residing in an apartment on the top floor of a single family home. The one way to that residence was through a door on the first floor that led to a utility room and a stairwell that led to her apartment. And the argument we made to the trial court, the argument we're making on appeal, is that the only door that provided her access to the outside did not meet the standards of the ordinance. That was, in effect, dictating what kind of exits would be required. And the portion of that code, the exit door required portion of the International Residential Code, states that not less than one exit door conforming to the section shall be provided for each dwelling unit, and that the exit door shall provide direct access from the habitable portions of the dwelling to the exterior. So our basic argument is the only door that there was that led from the habitable portion of the unit led to a stairwell and a utility room, which then led to a second door which led outside, and that's not sufficient under the code. The code itself defines what is a habitable portion of the unit, and specifically says that a stairwell, hallway, utility room is not habitable. So our argument is that there wasn't a door that met the requirements of the code, and because of that, there is at least a prima facie showing of a breach of the landlord's duty to provide a unit to my client that was up to code. Now, the last sentence of the exit door required paragraph is something that's been argued about back and forth in the briefs, and I think could probably do a little better job of clarifying what my position is about that last sentence. Because in my initial brief, I argued that it would require them, because of this section, to build an external stairwell or ramp, and I don't think that that is the case. I think that the last sentence of this code is referring to a two-story house, and I think it's important to know that the code we're talking about only concerns single-family residences, a house like the one we're talking about. I don't think there's been any argument about that. It wouldn't address a large apartment complex with several units, and I only mention that because I know that there is some case law out there about common areas and large apartment complexes. A lot of the case law is talking about fire escapes outside of windows in large apartment complexes, but there's a different code that deals with those types of commercial buildings. This code that we're addressing today just deals with single-family residences, and I think that that last sentence that says access to habitable levels, not having an exit in accordance, shall be by ramp or stairwell, and I think what they mean is if you have a two-story house and there is access directly from a habitable portion of the house downstairs, that's sufficient, and access to the upstairs can be by a stairwell or a ramp, but in the event that it's a separate unit altogether, you still need some access to the unit directly from a habitable portion of the unit, and I think to read it in the way the respondent has argued in his brief that you don't need an exit directly from a habitable portion of the unit as long as there's a ramp or a stairwell somewhere would make the paragraph contradict itself. It would basically be saying you shall provide one, and then you would have to interpret the last sentence to mean that you don't need to provide one as long as there's a stairwell and a ramp, and I think it can be read to make more sense, I think, and can be consistent throughout if it's read to mean that you have to provide a door from a habitable part at some part in the dwelling, but if there's multiple levels to the same dwelling, then that can be by stairwell or ramp, and so I think that the facts that I've pled, which I think are more specific than the facts that were pled in some of the cases dealing with fire escapes, because we've said specifically there was a utility room and a stairwell that was the only access to the unit, there wasn't a door leading directly from a habitable part to the outside of the unit for that reason, there wasn't a door that met what was required by the statute at the trial level. The court decided in reading it more generally, and to be fair to the trial court, it's difficult to, I think, flesh out in writing why or why not you might interpret such a small section of the statute to mean what it does, but we respectfully disagree with the trial court's interpretation. We think there has to be direct access from a habitable part of the unit to the outside, and to do that in this particular structure, there would have to be two approaches, more of the proximate cause issues of the case, perhaps, but in any event, we don't think that there was a proper door. The second issue of the case has to do with the second count of my complaint. There was two counts, more or less, one said there's negligence as a matter of law because there was a violation of the ordinance. The third count was there is a breach of contract because every lease, within every lease that a tenant signs, is also embodied all the ordinances and legal requirements for providing housing units for tenants. So we're saying that there was, first of all, there's negligence because they violated the ordinance. Second of all, there's a breach of contract because the ordinance was violated. The contract issues weren't discussed as generally at the trial court level because if the court had already found there wasn't a violation of the ordinance, there was no need to When the case concluded, there was a third amended complaint filed, which included a count for breach of contract. The defense made an oral motion to dismiss it. The court granted it, and basically the understanding was, as I think is contained in the records and the briefs, that the issue that resolved the ordinance violation would, in fact, resolve the contract action against us by way of similar motion, a 615 motion to dismiss. Both would be resolved on the same grounds. The second count is our request that the court revisit the issue of the relationship between landlords and tenants generally. And understandably, there is, I think it's the Gladier case, which is a case from the 80s that addressed the issue of a second exit or a fire escape explicitly. The appellate court, when they decided that case, found that it was not a common law duty to provide that. But I've asked the court to take another look, given that the last Illinois Supreme Court case that really discussed this duty to provide a reasonable means of egress, the duty of a landlord to treat its landlord. And in all likelihood, there is no common law duty, but we don't need to address it because there's ordinances that were in place even then that addressed the fire escapes and the exits, and the case can be resolved on those grounds. But when you read the tone that the Illinois Supreme Court has been taking with the issue of duty, I think that the opinion that I discuss in my brief is Marshall v. Burger King Corporation. They say when they begin their discussions about duty that it's difficult to pin down what that means, that discussions are amorphous, that different jurists treat the issue, they talk about it in different ways. But generally speaking, it's a matter of public policy. And there are four things that the court will look at when they're discussing whether or not a duty exists. They discuss them in the Marshall v. Burger King case, but the relationships between landlords and tenants was discussed in the Jack Spring case, although not in the context of negligence or duty. And I think that at least in common experience for most people in the Jack Spring case, people are not leasing land and building cabins on it anymore, which really was the case when the business owner, invitee, innkeeper, guest, these old common law relationships that have been in the cases for a very long time were established. The relationship between landlords and tenants was, at least in my common experience and perhaps in the court's common experience, much less like an innkeeper-guest experience. But that isn't necessarily the case now. Jack Spring talked about amending the common law when the common wars of the day have changed, when expectations have changed, when people's lifestyles have changed, and it makes more sense to establish a new duty where the relationship might have been considered something that imposed a duty in the past. And generally in my brief, I argue that in common experience today, when someone looks in the that are doing that are looking for and expect something that would be a safe and accommodating place to live. I think people in their common experience would feel that and may even be shocked to discover if it was in fact and is still the law, a landlord had no duty to them to provide them with a reasonably safe place to live. And the relationships between innkeepers and guests probably, in my opinion at least, more closely reflects the relationship between landlords and tenants in 2012, what people's expectations are, what people would reasonably expect a landlord would be required to do when they made something available to rent. The Supreme Court has said that business owners that open the doors to customers to walk into their stores are responsible for the safety of the people that walk through the door, including against negligence of third parties, most specifically in the Marshall versus Burger King corporation case where someone drove their car into the side of the restaurant and seriously injured and killed people, but also when there's third party criminal acts and have said that where men gather to do things, you must necessarily assume that they might also do evil things and commit crimes and that there's a duty to the extent that public policy would have them conform, protect against those things. And I think that in the common experience today, tenants that are very transient, in this case signing only a one-year lease at a time, they don't have an interest in improving the property. They're renting a place to live and they expect it to be safe. And I think that the same philosophies and the same logic that initially caused judges to tell business owners that they need to use reasonable care towards their patrons or innkeepers that they need to use reasonable care towards their guests would strongly support the imposition of that same relationship on a landlord and a tenant. No questions. Thank you, Judge. Thank you, Mr. Geiger. Mr. Krueger. May I approach? Yes, sir. Please. Good afternoon. The long and short of this situation is that there's nothing wrong with my client's apartment building. What you have here is a very common setup. You have an entrance to a hallway or utility area. Then you go up to a stairway and then you have the door to the second floor. This is a very, very common setup. If you look at the transcript from the hearing in front of Judge Peterson, he talked about that. This is a very, very common setup. There's no violation of the code here. If you look at the code, the code says that you shall provide direct access from the habitable portion of the dwelling to the exterior without requiring travel through a garage. Our exit is conforming. You're not going through a garage. Of course, the plaintiff wants the code to say that the door must go immediately from the inside to the outside. In other words, you can't have a stairway or hall or utility room. But that's not what the statute says. As a practical matter, there's tons of apartments and homes that would be non-conforming because many of them have a small hall or utility area or stairway or laundry room that's leading someplace else. This would put so many places into non-conformity, it kind of boggles the mind. The other thing that's very important here is, let's say, in our situation, if we didn't have that little hallway there or we didn't have the stairway there, that would not have prevented this incident. In fact, the intruder would have been closer had there not been a hallway or stairway. And Judge Peterson, I think, even talked about that, too, where in the situation that we have, it actually gave the tenant more protection because the intruder is farther away, has to go through a hallway or a stairway. That type of thing. The existence of this hallway and this stairway had nothing to do with the incident. It's common sense. It had nothing to do with what happened here. The other major point the appellant or the plaintiff makes here is that we need to have a reasonable means of ingress and egress. Certainly there was here. There's no question about that. The tenant lived here for over a year and she got in and out of her apartment without any problems. Really what they want is the court to say, hey, listen, landlord, you have to have a second exit or a second entrance. And you have in the latest case that we cited, there is simply no legal duty to provide another means of ingress or egress. It's not there. That's not the law. It's not required. When you get down to it, there's simply no legal precedent for holding my clients liable for the plaintiff's injuries. This was a common, everyday apartment. It was in compliance with the codes. There's nothing wrong with the entrance or exit. There's no duty. There's no proximate cause. You have the other issues with the criminal acts. I'm not going to get into those. It's in the briefs. It's in the motions to dismiss. But it's very, very clear here that there's no liability on the part of my clients. That's all I have if you have any questions. Mr. Kruger has argued generally that this is a common way for apartments to be set up. I would simply suggest that if there are several apartments in violation, that wouldn't make any difference. If they're in violation of the code, they're in violation of the code, then I suppose they should all be fixed. But whether it's a common mistake made by people that are converting these homes, I don't think is important to the legal issues. The second sentence of the statute that refers to the garage, I think pretty clearly that doesn't mean that the only restriction put in place by that paragraph is that exits cannot be through garages. I would suggest that the reason they say from the habitable portions without traveling through a garage is that garage is not specifically included in the definition of non-habitable spaces. So they didn't say through a garage or utility room or any of those other things in that section of the statute itself because all those things were previously defined when they defined habitable spaces. And so I don't think that the entire definition of that section of the statute is that you can't travel through a garage. And I don't think that that's the best interpretation of that section. Whether or not this violation was the cause of the injury, I think is beyond the reason for dismissal. I think at that point we're discussing proximate cause, which as I've argued in my brief is something that should not be considered but by the trier effect of hearing all the evidence. And I have said forth in my brief why I think conforming to the code would in fact have prevented the injury from occurring in my brief as well. And finally I would say that what we're asking for is not a second exit in all units, but simply one code conforming exit that leads directly from a habitable space to the outside, which is what I think is required by the code. Although in this case, given the construction of the building, I think the only way to give a code conforming exit would have been in fact a second exit leading directly from a bedroom or the kitchen or somewhere else, which would have necessitated in a two story, two apartment home, two exits from the top story. And I think that's what the code would require. That's all I have. Thank you, Mr. Krueger. Excuse me, Mr. Geiger and Mr. Krueger, thank you too. This matter will be taken under advisement. A written disposition will be issued and as I said before, Justice Holdridge will also be participating in the discussions and the resolution of this case. Right now we'll be at a brief recess for a panel change before the next case.